UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

| | | |
|---|---|---|
| JOHN F. KENNEDY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-CV-299-HRW |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ERIC D. WILSON, *et al.*, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*\*    \*\*\*\*    \*\*\*\*    \*\*\*\*

The Court has reviewed and considered the following pleadings;

(1)    the "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment"
filed by counsel for Defendants Shawn Burchett, Beth Burchett, Phillip Settles, Jr.,
("Settles") and Eric D. Wilson ("Wilson") [D. E. No. 53, filed under seal at D. E. No. 55],
all of whom are current or former officials employed at the United States Penitentiary
("USP")-McCreary located in Pine Knot, Kentucky [1];

(2)    the "Motion to Dismiss" filed by Defendant R. T. Lowry, M.D. ("Lowry") [D.

---

[1]

When referring to these individuals collectively, the Court will hereafter identify them as
"the USP-McCreary Defendants." Defendant Shawn Burchett, formerly a Lieutenant at USP-
McCreary, is now a Special Investigative Agent at the USP-Hazelton, located in Hazelton, West
Virginia; Settles, formerly a Senior Officer at USP-McCreary, is now a Senior Officer at the Federal
Correctional Institution ("FCI") located in Manchester, Kentucky; and Wilson, formerly the Warden
of USP-McCreary, is now the Warden of the Federal Correctional Complex located in Petersburg,
Virginia. [D. E. No. 55, p. 2]

1

E. No. 56];

(3)     the "Response" [D. E. No. 64] filed by Plaintiff John F. Kennedy (in response to the USP-Defendants' Motion to Dismiss, D. E. No. 53); and

(4)     The "Reply (to Kennedy's Response)" [D. E. No. 67] filed by the USP-McCreary Defendants.

For the reasons set forth below, the Court will grant the defendants' motions to dismiss Kennedy's Eighth Amendment medical claims against Lowry and Beth Burchett; will grant the motion for summary judgment as to Kennedy's Eighth Amendment failure to protect claims against Wilson and Shawn Burchett; but will deny the motion for summary judgment as to Kennedy's Eighth Amendment failure to protect claims against Settles.

## 1. Procedural History

Kennedy is currently confined in the United States Penitentiary-Canaan, located in Waymart, Pennsylvania. In November 2010, Kennedy filed this *pro se* civil rights action asserting claims under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). [D. E. No. 2] The following is a summary of the factual allegations set forth in both Kennedy's original complaint and his amended complaint.

In his original complaint, Kennedy alleged that while he was confined in USP-McCreary in 2009, a list containing the names of inmates who were allegedly government informants or "snitches," including his name, was circulated among the other inmates.

2

Wilson and Lieutenant Shawn Burchett ordered him and all other inmates named in this list to be placed in the Special Housing Unit ("SHU") at USP-McCreary for their protection from the other inmates. On September 6, 2009, Settles escorted Kennedy to the SHU area of the prison, but before Settles actually "placed" Kennedy in the SHU Cell #114, Inmate Nathan Mott ("Mott") who already occupied Cell #114, announced that Kennedy was a "snitch" and that he would hurt Kennedy if Kennedy was placed in the cell with him. Kennedy alleged that despite knowing the danger he faced from Mott, the USP-McCreary staff nevertheless placed him in that SHU cell with Mott; that Mott assaulted him on that same day; and that he (Kennedy) suffered head and eye injuries, a fractured finger, and an injured lip.

Kennedy alleged that by placing him in the SHU cell with that inmate, Wilson, Shawn Burchett, and Settles ignored a known threat from another inmate, failed to protect him from physical assault by that inmate, and thereby demonstrated deliberate indifference to his safety in violation of his rights guaranteed under the Eighth Amendment of the U.S. Constitution. Kennedy further alleged that after the assault, he was denied medical treatment for his serious medical needs injuries in violation of his Eighth Amendment rights. Kennedy demanded relief in the form of a jury trial; monetary damages in the amount of $10,000,000.00; and punitive damages in the amount of $5,000,000.00. On October 17, 2011, the Court entered directed Wilson, Shawn Burchett, and Settles to respond to both Kennedy's Eighth Amendment failure to protect claims and his medical claims. *See* Order, D. E. No. 17.

On December 27, 2011, Kennedy filed a motion to amend his Complaint to add USP-

3

McCreary nurse Beth Burchett and former USP-McCreary medical contractor Lowry as defendants in their individual capacities, alleging that they were responsible for denying him proper and necessary treatment on September 6, 2009. [D. E. No. 24] On January 3, 2012, the Court granted that motion, ordered service of process on Beth Burchett and Lowry, and directed them to respond to Kennedy's Eighth Amendment medical claims. [D. E. No. 25]

## 2. Motion to Dismiss/Summary Judgment filed by the USP-McCreary Defendants

### A. Eighth Amendment Failure to Protect Claims

Wilson and Shawn Burchett assert that they were not personally involved in the decision to place Kennedy in SHU Cell #114 with Mott on September 6, 2009; and that they were only involved on a broader level by making the decision to place Kennedy and other inmates listed on the "snitch" list in SHU for their own protection. Wilson and Shawn Burchett argue that because they were not directly or personally involved in the incidents which transpired in the SHU on September 6, 2009, and because the doctrine of *respondeat superior* does not apply in *Bivens* actions, they can not be held vicariously liable under *Bivens* for the actions of others.

Settles states that although he assisted in escorting Kennedy to and placing him in SHU Cell #114 on September 6, 2009, he had no prior knowledge and received no information indicating that the inmate who was already occupying that cell would harm Kennedy if Kennedy were housed with him. Settles asserts that the two other correctional

4

officers present at that time confirm his version of the events. Settles alleges that when the altercation between Kennedy and the other inmate broke out, he immediately ordered the two inmates to stop fighting, and that when the they did not do so, he and other staff members then entered the cell and separated the inmates.

The USP-McCreary Defendants contend that based on the investigation conducted by Lieutenant Wayne Foster ("Foster"), Mott did not "assault" Kennedy, and that Mott and Kennedy were merely "fighting" over some batteries. They further argue that Kennedy did not assert an Eighth Amendment failure to protect claim against Nurse Beth Burchett. Finally, they assert that they are entitled to qualified immunity because they were not aware of any clearly established laws which constitutionally prohibited their alleged actions during the relevant time-period.

## B. Eighth Amendment Medical Claims

The USP-McCreary Defendants advance four arguments in support of their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment as to Kennedy's Eighth Amendment medical claims. First, they argue that those claims are barred by Kentucky's one-year statute of limitations.

Second, the USP-McCreary Defendants argue that although Kennedy filed administrative remedies regarding his placement in SHU on September 6, 2009, he failed to file any administrative remedies alleging that they denied him necessary medical treatment in relation to the injuries he sustained on September 6, 2009, as required by the Prison

5

Litigation Reform Act ("PLRA"). They base this argument on the sworn Declaration submitted by Carlos Martinez, Supervisory Attorney at the Lexington Consolidated Legal Center located at the Federal Medical Center in Lexington, Kentucky. [D. E. No. 55-1] The USP-McCreary Defendants contend that Kennedy's Eighth Amendment claims alleging the denial of medical treatment should be dismissed because Kennedy failed to administratively exhaust those claims .

Third, the USP-McCreary Defendants allege because that they had no involvement with Kennedy's medical care, and because a *Bivens* claim requires that any named defendant be personally involved in the alleged medical events, they cannot be held liable for any claims relating to Kennedy's medical care or the alleged denial of medical care. Fourth, the USP-McCreary Defendants contend that without waiving the foregoing arguments, Kennedy received proper medical care and that contrary to his assertions, he did not break his finger on September 6, 2009.

### 3. Motion to Dismiss Amended Complaint filed by Lowry

Lowry advances three arguments in support of his Motion to Dismiss Kennedy's Eighth Amendment medical claims against him. He argues that (1) Kennedy failed to administratively exhaust his claims alleging deliberate indifference to his serious medical needs; (2) assuming that Kennedy properly grieved his medical treatment claims, Kennedy failed to assert his deliberate indifference claim prior to the expiration of the applicable statute of limitations; and (3) assuming Kennedy timely asserted his deliberate indifference

claims in a timely manner, they fail as a matter of law because Lowry can not be held liable under *Bivens* for his alleged failure to properly supervise the medical treatment rendered by Beth Burchett.

### 4. Kennedy's Response to the Defendants' Motions to Dismiss

In his Response, Kennedy concedes that he did not administratively exhaust his Eighth Amendment claims alleging deliberate indifference to his serious medical needs. [D. E. No. 64, p. 1, ¶ A] However, with respect to his Eighth Amendment failure-to protect claims, Kennedy contends that significant issues of fact exist. Kennedy alleges that USP-McCreary officials should not have placed inmates who had been identified on the "snitch list" in SHU cells with inmates who had not been identified as "snitches." Kennedy alleges that inmates who had not been identified on the "snitch" list--such Mott--were

"...likely if not prone to take allegations of Plaintiff being [a "snitch"] at face value, versus housing the inmates whom [sic] were on this list together, with the common situation to avoid or reduce the likelihood of violence being perpetuated against the Plaintiff due to the discovery of knowledge of Plaintiff being on this snitch list."

[*Id.*, p. 4, ¶ G]

Kennedy alleges that the defendants failed to investigate whether the inmates already housed in the SHU cells (1) had knowledge of the "snitch" list, (2) were "predators of snitches," or (3) otherwise posed a threat "...in any way to snitches or anyone with the label." [*Id.*, p. 5, ¶ K] Kennedy alleges that by placing him in a cell with Mott, who Kennedy

7

claims was intolerant[2] of anyone labeled as or rumored to be a "snitch," the defendants were deliberately indifferent to his physical safety. [*Id.*, pp. 5-6, ¶¶ L- P] Kennedy asserts that the defendants placed him in a "wolf-den," and that Mott was the "wolf." [*Id.*, p. 6, ¶ O]

## 5. Reply to Kennedy's Response

The USP-McCreary Defendants reply that Kennedy provided nothing to support his bald allegation that merely placing him in a cell with an inmate who was not on the "snitch list" was so inherently dangerous that it qualified as a constitutional violation. [D. E. No. 67] They reiterate that Wilson and Shawn Burchett were not directly involved in the alleged incidents in the SHU on September 6, 2009; that neither Settles nor the other witnesses present in the SHU heard Mott make any threats against Kennedy when Settles placed Kennedy in Cell #114 on September 6, 2009; and Foster determined in his investigative report that the "fight" between Kennedy and Inmate Nathan Mott stemmed from a dispute over batteries, not because Kennedy's name was on the "snitch list." The USP-McCreary

2

In several paragraphs of his Response, Kennedy states that the defendants violated his Eighth Amendment right to remain free from unusual punishment by housing him in a cell with an inmate who was allegedly "intolerant" of anyone considered to be a snitch [*Id.*, p. 6, ¶ O], but in two other passages of his Response, Kennedy also stated that the defendants violated his Eighth Amendment rights by placing him in a cell with an inmate who was "indifferent" to anyone labeled as a "snitch." [*Id.*, p. 5, ¶ J; p. 6, ¶ L]. Considering that Kennedy is a *pro se* litigant, and reading these two statement in the context of his argument at large, and it appears that Kennedy used the wrong term in describing the other inmate as "indifferent. If the other inmate had been "indifferent" to an alleged "snitch," (such as Kennedy), Kennedy would not have faced any harm from that inmate because "indifference" denotes **a lack of** interest or concern for something. It appears that Kennedy actually may have intended to state that potential harm existed at the hands of an inmate who was "intolerant" of alleged "snitches," not "indifferent" to alleged snitches.

8

Defendants argue that Kennedy offered no competent evidence to dispute any of their arguments.

## DISCUSSION
### 1. Eighth Amendment Medical Claims

The Court will grant the defendants' motions to dismiss Kennedy's Eighth Amendment claims alleging the denial of medical treatment because Kennedy admits that he did not administratively exhaust those claims. *See* Kennedy Response [D. E. No. 64, p. 1 ¶ A].

The PLRA bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). In order to exhaust administrative remedies, prisoners must complete the administrative review process[3] in accordance with the deadlines and other applicable procedural rules established by state law. *Jones*, 549 U.S. at 218–19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court

---

[3]

The Bureau of Prisons ("BOP") has adopted an Administrative Remedy Program "to allow an inmate to seek formal review" of any issue relating to the inmate's confinement. 28 C.F.R. § 542.10(a). The BOP's regulatory regime for prisoner grievances consists of four tiers: (1) seeking informal resolution with a staff member; (2) submitting a grievance to the Warden on a "BP–9" form; (3) appealing to the Regional Director on a "BP–10" form within 20 days of the date the Warden signed the response to the grievance; and (4) appealing to the General Counsel of the Central Office on a "BP–11" form within 30 days of the date the Regional Director signed the response to the appeal. *Id.* §§ 542.13–15. The BP–10 and BP–11 forms must be accompanied by a copy of the filings and responses from the previous levels. *Id.* § 542.15(b).

9

held that the PLRA's exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id*. at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009).

Failure to exhaust is an affirmative defense to a civil suit brought by a prisoner. *See Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." In this case, all of the defendants have raised the defense of failure to exhaust, and Kennedy concedes that he did not exhaust his Eighth Amendment medical claims. Because Kennedy has admitted that he did not exhaust his Eighth Amendment medical claims, it is unnecessary to address those claims any further. The Court will grant the motions to dismiss Kennedy's Eighth Amendment medical claims against Lowry and USP-McCreary Nurse Beth Burchett.

### A. Eighth Amendment Failure to Protect Claims Against Defendants Wilson and Lieutenant Shawn Burchett

Because Wilson and Shawn Burchett have submitted affidavits and other materials outside of the pleadings, the Court will consider their arguments as a motion for summary judgment under Federal Rule of Civil Procedure 56. *See Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993); *Smith v. The Cheesecake Factory Restaurants, Inc.*, No. 3:06–00829, 2010 WL 441562, at**3–4 (M.D.Tenn. Feb.4, 2010) (court converted motion to dismiss to motion for summary judgment where both parties relied on proof that fell outside pleadings).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341–42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the nonmoving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

A failure to protect claim is governed by standards substantially similar to those applied to the claim for deliberate indifference to serious medical needs. To establish a *prima facie* claim that the defendants were deliberately indifferent to his need for protection from assault by another inmate, Kennedy's allegations must satisfy an objective component and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 835–38 (1994). The objective component is satisfied by allegations that absent reasonable precautions, an inmate was exposed to a substantial risk of serious harm. *Id.* at 836.

To satisfy the subjective component, a plaintiff must allege that the defendant was aware of facts from which the inference could be drawn that a substantial risk of harm would exist if reasonable measures were not taken, that the defendant actually drew the inference,

11

and that the defendant acted in disregard of that risk. *Farmer*, 511 US. at 837 ("We hold ...

that a prison official cannot be found liable under the Eighth Amendment for denying an

inmate humane conditions of confinement unless the official knows of and disregards an

excessive risk to inmate health or safety; the official must both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must also

draw the inference."). *See also Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010).

Kennedy has satisfied the *objective* component of his failure to protect claim. He

alleged in his complaint that Mott told the prison staff that if they placed Kennedy in SHU

Cell #114 with him, he (Mott) would physically hurt Kennedy. *See Amick v. Ohio Dept. of

Rehabilitation & Correction*, 2013 WL 1223570, at *8 (6th Cir. March 27, 2013)

(Table)(Unpublished) ("A physical fight between two adult men in a locked cell clearly

posed a substantial risk of serious harm.") However, with respect to Wilson and Shawn

Burchett, Kennedy fails to satisfy the *subjective* prong of his failure to protect claim, *i.e.*, he

has not established that Wilson and Shawn Burchett acted with deliberate indifference to his

health or safety.

In his original complaint, Kennedy alleged as follows:

At Warden Wilson's direction and SIS Officer Burchett handling officers went
about a massive round up throughout the facility locking up (placing in a
administrative detention) all inmates on the "Snitch List." Plaintiff was one
of those inmates, upon being escorted to Cell #114 in SHU by Office [sic] P.
Settles, SIS, and several other officers **Inmate Nathan Mott #13269-007 who
was in SHU for/ has a history of assaultive behavior/is a known predator
inmate told staff that he was not taking a snitch as cell mate and if
plaintiff was put in his cell he would hurt him. Staff ignored his threat**

12

**and ordered Inmate Mott to cuff up**. He did so then I was placed in the cell (handcuffed) then staff took Inmate Mott's cuffs off 1st then when I got to the food slot to be uncuffed Inmate Moot assaulted/attacked me and staff watched while I was beat.

[D. E. No. 2, p. 3, ¶ 3 (emphasis added)]

Kennedy thus alleged that Mott told the "staff" that he would harm Kennedy if they were forced to share a cell, but Settles was the only USP-McCreary staff member who Kennedy identified as being present when Mott allegedly made his verbal threat on September 6, 2009. In fact, Settles was the *only* USP-McCreary staff member named as a defendant to this action who Kennedy identified as being involved in his transfer to and placement in Cell #114. If Kennedy contends that either Wilson or Shawn Burchett heard Mott make the alleged threat against him on September 6, 2009, he did not sufficiently articulate that allegation either in his complaint or in his response to the motions to dismiss. Instead, Kennedy alleged only in the very broadest terms that Mott told "staff" that he would hurt Kennedy if he were forced to share a cell with Kennedy. The term "staff" is a broad one and could conceivably include hundreds of individuals employed at USP-McCreary. Both Wilson and Shawn Burchett testified in their Declarations that they possessed no prior information about Mott's alleged animosity toward Kennedy.

In his sworn Declaration [D. E. No. 55-2], Shawn Burchett stated that on September 6, 2009, he was employed as Lieutenant at USP-McCreary, where he worked in Special Investigative Services, which was responsible for investigating inmate, staff, and visitor misconduct, and other issues related in institutional security. [*Id.*, p. 1, ¶ 1] Shawn Burchett

13

stated that he was familiar with Kennedy; that he knew that a list containing the names of various inmates alleged to be "snitches"-including Kennedy-was circulating around the prison's inmate population; and that he knew that because inmates who are labeled as informants or "snitches" are often in danger of harm from other inmates, the decision was made to remove the inmates identified on the "snitch" list from the general population and place them in the SHU for their own protection, because the SHU is a locked and secure housing unit which inmates housed in the general population can not access. [*Id.*, p.1-2, ¶ 2]

Shawn Burchett stated that although he was involved in, and concurred with, the larger decision to place Kennedy and the other inmates identified on the list in the SHU for their protection, *id.*, ¶ 4, he had "no direct involvement with placing Plaintiff [Kennedy] in a cell at USP-McCreary or making any decisions regarding Plaintiff's cell or cellmates in SHU." [*Id.*, ¶ 3] Burchett stated that the Correctional Services Department in the SHU was responsible for placing inmates in the SHU cells. [*Id.*]

Shawn Burchett stated that he later learned that on September 6, 2009, Kennedy and and another inmate became involved in a physical fight after Kennedy was placed in Cell #114. [*Id.*, ¶ 4] However, Shawn Burchett stated that on that date, he was not present in the SHU when Kennedy was escorted to and placed in Cell #114, *id.*, ¶ 4; that he had "no pre-existing knowledge of any danger to Plaintiff [Kennedy] by his placement with the other inmate in SHU," *id.*, and that to the best of his (Burchett's) knowledge, "...no staff member

14

had any reason to believe Plaintiff would be assaulted when he was placed in the SHU cell on September 6, 2009." [*Id.*].

In his sworn Declaration [D. E. No. 55-5], Wilson stated that as Warden and Chief executive officer of USP-McCreary, he supervised multiple departments within the prison, including the Correctional Services Department, which is responsible for inmate custody and security; and that he delegated all daily responsibilities and decisions regarding Kennedy's custody and security to the Correctional Services staff at USP-McCreary.[4] [*Id.*, pp. 1-2, ¶¶ 1-2]

Wilson stated that he recalled that in 2009, that prison staff became aware of a list containing the names of various inmates alleged to be "snitches"–including Kennedy's name– was circulating around the prison's inmate population. [*Id.*, p. 2, ¶ 3] Wilson stated that because inmates who are labeled as informants or "snitches" are often in danger of harm from other inmates, the decision was made to remove the inmates identified on the "snitch" list from the general population and place them in the SHU for their own protection, since the SHU is a locked and secure housing unit which inmates housed in the general population can not access. [*Id.*]

Wilson stated that although he was involved in, and concurred with, the larger decision to place Kennedy and the other inmates identified on the list in the SHU for their

---

[4]

      Wilson stated that he was the Warden of USP-McCreary from February 8, 2009, to February 10, 2011.

protection, *id.*, p. 3, ¶ 5, he had "no direct involvement with placing Plaintiff [Kennedy] in a cell at USP-McCreary or making any decisions regarding Plaintiff's cell or cellmates in SHU." [*Id.*, p. 2, ¶ 4] Wilson reiterated that "these decisions and duties were delegated to my staff in the Correctional Services Department in the SHU at USP-McCreary." [*Id.*] Wilson stated that he was not present in the SHU on September 6, 2009, when Kennedy was placed in the SHU cell, *id.*; that he had received no prior information suggesting that Kennedy would face danger if he were placed in the SHU Cell #114, *id.*, ¶ 5; that to the best of his knowledge, no other USP-McCreary staff member had any reason to believe that Kennedy would be assaulted if he were placed in the SHU on September 6, 2009, *id.*; and that he believed that placing Kennedy in the in SHU was necessary to protect him. [*Id.*, pp. 2-3, ¶ 5]

When a summary judgment motion is properly supported by an affidavit, "an opposing party may not rely merely on allegations or denials in [his] own pleading." Fed. R. Civ. P. 56(e)(2). Instead, the non-moving party must come forward with "specific facts showing a genuine issue for trial." Kennedy, the non-moving party, has not met that burden in this case with respect to Wilson and Shawn Burchett. Kennedy's failure to protect claims against Wilson and Shawn Burchett asserted in the complaint were sufficient to survive initial screening, but Kennedy has since offered no convincing proof to counter the sworn Declarations and other documentation submitted by Wilson and Shawn Burchett in which they disclaim: (1) direct involvement in the decision to place Kennedy in SHU Cell #114

16

with Mott; (2) direct involvement in the alleged events in the SHU on September 6, 2009, and (3) prior knowledge of *any* information suggesting that placing Kennedy in SHU Cell #114 would subject him to harm at the hands of any other inmate.[5]

A plaintiff cannot establish the liability a defendant's liability for a constitutional tort absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598 (1976); *Bivens*, 403 U.S. at 390 n. 2; *Williams v. Mehra*, 135 F.3d 1105, 1114 (6th Cir. 1998). A prisoner cannot, however, assert a *Bivens* claim against prison or administrative officials under the doctrine of *respondeat superior* merely because he or she holds a supervisory position. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95, (1978); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *aff'd*, 257 F. App'x 897 (6th Cir. 2007).

Further, Kennedy offers no evidence suggesting that Wilson or Shawn Burchett "encouraged the specific incident of misconduct or in some other way directly participated in it, or at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (internal quotation marks omitted).

---

[5]

In his Declaration, Settles, the USP-McCreary Correctional Officer who was present when the altercation between Kennedy and Mott occurred, stated that neither Lieutenant Shawn Burchett nor Warden Eric Wilson were present when he escorted Kennedy to, and placed him in, SHU Cell #114. [D. E. No. 55-3, p. 3, ¶ 4]

In *Dale v. Poston*, 548 F.3d 563, 568 (7th Cir.2008), the Seventh Circuit addressed the inherent risk faced by snitches in prison. The plaintiff, a federal inmate, brought a Bivens action against several prison employees claiming that they violated the Eighth Amendment by failing to protect him from an attack by another inmate. The plaintiff was serving time at a high-level security federal penitentiary after he pleaded guilty to drug charges. As part of a plea agreement, the plaintiff agreed to cooperate with the government and provide testimony against persons involved in the drug trade. While he was confined in the prison, he provided testimony against another inmate who was also housed in the same unit as the plaintiff. He was labeled a snitch by the other inmates. He was subsequently attacked by another inmate in the prison yard. The plaintiff argued that the defendants should be found to have been deliberately indifferent simply because he had been labeled a snitch by other inmates. The Seventh Circuit rejected this argument, explaining:

Dale asks us to find deliberate indifference due to the inherent risks faced by snitches in prison; he would have Eighth Amendment liability every time an inmate known to be cooperating with authorities is attacked. That would be quite a stretch. Just because a correctional officer knows an inmate has been branded a snitch-and it's common knowledge that snitches face unique risks in prison-does not mean that an officer violates the Constitution if the inmate gets attacked. Each case must be examined individually, with particular focus on what the officer knew and how he responded.

*Dale*, 548 F.3d at 569–570.

Merely because Mott may have considered Kennedy to be a snitch does not establish Eighth Amendment *Bivens* liability against Wilson and Shawn Burchett for failure to protect. "Put simply, there is no evidence that any jail official was actually aware of facts from which

18

an inference could be drawn that a substantial risk of harm exists, or that any jail official actually drew such an inference." *See Ford v. Alexander*, No. No. 5:11CV575, 2013 WL 978209, at *12 (N.D. Ohio Feb. 22, 2013) (rejecting prisoner's Eighth Amendment failure to protect claims under similar circumstances). Contrast that result with *Miller v. Shelby County, Tenn.*, 93 F. Supp.2d 982, 900 (W.D. Tenn. 2000), in which the court determined that prison officials failed to take reasonable steps to protect the plaintiff from a *known* risk of physical harm at the hands of two other inmates. "Had Defendant taken these steps, the Court could not find deliberate indifference even if the harm actually occurred. *Farmer*, 511 U.S. at 844, 114 S.Ct. 1970." *Miller*, 93 F. Supp.2d at 901.

Eighth Amendment liability can not be imposed if prison officials respond reasonably to a *known* risk. *Farmer*, 511 U.S. at 844 (emphasis added). Even assuming that Mott believed that Kennedy was a snitch–an assumption which is not based on any evidence advanced by Kennedy, other than his bald assertion–Kennedy has submitted no evidence to suggest that *prior to or on* September 6, 2009 fight, Wilson and Shawn Burchett were aware of Mott's alleged belief, or that they possessed any other knowledge indicating that Mott had an animus against Kennedy.

In his response, Kennedy asserts that Wilson and Shawn Burchett should have known that merely placing him in a cell with an inmate who was not included on the "snitch list" was so inherently dangerous that it amounted to a constitutional violation. This argument is too tenuous to have merit. Wilson and Shawn Burchett stated under oath that they removed Kennedy and the other inmates identified in the "snitch list" from the general population and

placed them in segregation for their protection, and that they had no reason to suspect that Mott or any other USP-McCreary inmate already housed in the SHU posed a threat to Kennedy's safety.

Kennedy's unsubstantiated theory that Wilson and Shawn Burchett should have concluded that any and all inmates not identified on the circulating "snitch list" posed a threat to inmates whose names were on that list is based on nothing more than sheer speculation, which is insufficient to defeat a motion for summary judgment. *See Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir.2008) ("Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment."); *Lamping v. Walraven*, 30 F. App'x 577, 580 (6th Cir. 2002) ("[Plaintiff's] allegations amount to speculation, and mere speculation will not overcome a motion for summary judgment.").

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons–Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir.2000). In this case, because Kennedy has not shown that Wilson and Shawn Burchett acted with deliberate indifference to his physical safety, he has failed to established the existence of an element essential to his Eighth Amendment failure to protect claims against them. Accordingly, no genuine issue of material fact under Rule 56 exists with respect to Wilson

20

or Shawn Burchett, and their motion for summary judgment will be granted. It is therefore unnecessary to address their qualified immunity arguments.

## B. Eighth Amendment Failure to Protect Claims
## Against Defendant Settles

Because the Court has considered materials outside of the pleadings relative to Settles, it will also treat his arguments as a motion for summary judgment. The Court determines that a genuine issue of fact exists concerning Kennedy's Eighth Amendment failure to protect claim against Settles.

Kennedy specifically alleged in his complaint that on September 6, 2009, Mott told the "staff" that he was "not taking a rat as a cellmate;" that he would hurt Kennedy if Kennedy were placed in the cell with him; and that the "staff" ignored Mott's verbal threat by placing Kennedy in Cell #114 with Mott, who immediately attacked and injured him. As previously noted, Settles was the "staff member" whom Kennedy specifically identified as being present moments prior to the altercation of September 6, 2009. Settles and other witnesses directly contradict Kennedy's version of the events and contend that they heard no threats which would have alerted them that Kennedy faced potential physical harm from any other inmate.

In his sworn Declaration [D. E. No. 55-3], Settles states that on September 6, 2009, he worked as a Senior Officer Specialist (Correctional Officer) in the SHU at USP McCreary, and that on that date, he was directed to, and did, (1) secure Kennedy, (2) transport Kennedy to SHU Cell #114, and (3) physically place Kennedy in SHU Cell #114.

21

[*Id.*,p.1, ¶ 1] Settles states that he did not make the decision either to place Kennedy in SHU Cell #114, or to house Kennedy with the particular inmate occupying SHU Cell #114. [*Id.*] During this process, Kennedy was handcuffed as was the other inmate who was occupying SHU Cell #114. [*Id.*, p. 2, ¶ 2]

Settles states that while he was escorting Kennedy to Cell #114 and physically placing him in that cell, he did not hear the inmate who was already occupying SHU Cell #114 announce that he would harm Kennedy if Kennedy was placed in the cell with him. [*Id.*, ¶ 3] Settles states that neither he, nor any other USP-McCreary staff member, had any pre-existing knowledge that placing Kennedy in SHU Cell #114 with the occupant of that cell would subject Kennedy to danger or assault from that inmate. [*Id.*] Settles states, "In fact, my understanding was Plaintiff [Kennedy] was placed in the SHU cell for his own protection." [*Id.*]

Immediately after Settles placed Kennedy in Cell #114 and removed Kennedy's handcuffs, the other inmate began striking Kennedy with closed fists; that he (Settles) verbally ordered the other inmate to cease hitting Kennedy; and that Kennedy responded by swinging his closed fists and striking the other inmate. [*Id.*, p. 3, ¶ 4] Settles again ordered both inmates to stop fighting, and several other prison staff members entered the cell and separated the two inmates. [*Id.*] Settles then prepared disciplinary incident reports charging both Kennedy and the other inmate with "Fighting With Another Person," a BOP Code 201 offense. [*Id.*, ¶ 5]

On September 6, 2009, Senior Officer Specialist David Schlosser and Senior Officer

22

Specialist Dustin Thompson helped Settles transport Kennedy to, and place Kennedy in, SHU Cell #114. [Schlosser Declaration, D. E. No. 55-6, pp. 1-2, ¶ 2; Thompson Declaration, D. E. No. 55-7, p. 2, ¶ 2] Thompson stated that he was present in SHU Cell #114 when the fight broke out; that he assisted with restraining, separating and handcuffing both inmates; and that he then escorted the other inmate to another part of the SHU to be assessed by medical staff. [Thompson Declaration, D. E. No. 55-7, pp. 2-3, ¶ 4] Schlosser stated that when the fight broke out, he radioed for assistance. [Schlosser Declaration, D. E. No. 55-6, p.2, ¶ 4] After other staff members arrived, Schlosser entered the cell, placed Kennedy against the wall and handcuffed him, and escorted him to the SHU medical room for a medical assessment. [*Id.*]

As for Kennedy's allegation that Mott verbally informed Settles that he would harm Kennedy if Kennedy were placed in the cell with him, Schlosser stated, "I recall that the inmate in the cell did not voice or otherwise communicate any objections to Plaintiff being placed with him, or making any threats against Plaintiff." [*Id.*, p.2, ¶ 3] Thompson's version of the events is not quite as concrete, as he states, "I cannot recall the inmate in the cell voicing or otherwise communicating any objections to Plaintiff being placed with him, or making any threats against Plaintiff." [Thompson Declaration, D. E. No. 55-7, p. 2, ¶ 3].

In his sworn Declaration [D. E. No. 55-4] Foster stated that he investigated the incident of September 6, 2009, and that when he interviewed Kennedy, Kennedy admitted that his altercation with Mott arose over a theft of some batteries which Kennedy owned [*Id.*, p. 2, ¶ 4] However, Foster stated in his 9/6/09 Investigative Memorandum that when he interviewed Mott, Mott stated "'the dude is a rat and I'm not down with that. It is over and

23

I'm not messing with him anymore.'" [*Id.*, p. 4]

In his Investigative Memorandum, Foster characterized the September 6, 2009, incident as a fight--not an assault--and that the cause was a property dispute between Kennedy and Mott over some batteries. [*Id.*, p. 4] Foster stated that at no time during his investigation did Kennedy or Mott ever blame the prison guards or other USP-McCreary staff for the "fight." [*Id.*, p. 2., ¶ 4] Foster further states that neither Kennedy nor Mott informed him that they had previously warned the prison staff that if they placed Kennedy in the cell with Mott, that Mott would hurt Kennedy. [*Id.*]

Thus, Kennedy claims that Mott clearly warned Settles that he would harm Kennedy if he had to share a cell with Kennedy; Settles and Schlosser dispute that allegation; and Foster describes the altercation between Kennedy and Mott as a mere fight, not an assault on Kennedy. Yet in his own Declaration, Foster stated that Mott described Kennedy as a "rat," and that "he [Mott] was not down with that." [D. E. No. 55-4, p. 2, ¶ 4]

In sum, the Court is faced with a factual dispute between Settles, Schlosser, and Foster (on the one hand), and Kennedy (on the other hand), as to whether Settles was aware of a potential threat to Kennedy's safety from Mott as he placed Kennedy in SHU Cell #114 on September 6, 2009. The trier of fact should determine such a factual dispute. *See Curry v, Scott*, 249 F.3d 493, 507–09 (6th Cir. 2001) (finding an issue of fact existed as to whether defendants actually knew of a substantial risk of serious harm to prison inmates, precluding summary judgment on Eighth Amendment claim of deliberate indifference); *Browning v. Pennerton*, 633 F.Supp.2d 415, 433 (E.D. Ky. 2009) (summary dismissal of Browning's

"failure-to protect" claims against some prison officials was not appropriate where issues of fact about the knowledge of a threat to Browning's safety existed); *Hernandez v. Harrington*, No. 2:09-CV-167, 2012 WL 967428 at *5 (W.D. Mich. March 2, 2012) (denying summary judgment motion where "...the record shows that there is an issue of fact regarding whether Plaintiff told Defendant that he was being threatened by his roommates and that was the reason he was seeking to be moved to a different cell").[6]

For these reasons, the motion for summary judgment as to Kennedy's Eighth Amendment failure to protect claims against Settles will be denied. The Court will refer this proceeding to United States Magistrate Judge _____ to establish, at the appropriate time, a discovery and dispositive motions schedule, conduct all further proceedings, and prepare proposed findings of fact and recommendations on any dispositive motions.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)    The Motion to Dismiss, Motion for Summary Judgment [D. E. No. 53] filed by Defendants Shawn Burchett, Beth Burchett, Phillip Settles, Jr., and Eric D. Wilson

---

[6]

*See also Catanzaro v. Michigan Dept. of Corrections*, No. 1:08-CV-11173, 2011 WL 768115, at *6 (E. D. Mich. Feb. 10, 2011) (denying defendants' motions for summary judgment where the prisoner and the defendant-prison official presented "two diametrically opposed versions of what happened."); *DeCosta v. Medina County*, No. 1:04CV1118, 2006 WL 1474000, ay **5-6 (N.D. Ohio May 24, 2006) (denying summary judgment in an Eighth Amendment failure to protect action, where the plaintiff alleged she told the defendants about an official's misconduct and the defendants denied any prior knowledge of the official's alleged misconduct).

25

is **GRANTED IN PART** and **DENIED IN PART**, as follows:

(a)    The Motion to Dismiss Plaintiff John F. Kennedy's Eighth Amendment medical claims against Defendant Beth Burchett is **GRANTED** and those claims are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust;

(b)    The Motion for Summary Judgment as to Plaintiff John F. Kennedy's Eighth Amendment failure to protect claims against Defendants Shawn Burchett and Former Warden Eric D. Wilson is **GRANTED**, and Plaintiff John F. Kennedy's Eighth Amendment failure to protect claims against Defendants Shawn Burchett and Former Warden Eric D. Wilson are **DISMISSED WITH PREJUDICE**;

(c)    The Motion for Summary Judgment as to Plaintiff John F. Kennedy's Eighth Amendment failure to protect claims against Defendant Phillip Settles, Jr. is **DENIED**, and those claims shall proceed;

(2)    The Motion to Dismiss filed by Defendant R. T. Lowry, M.D., [D. E. No. 56] is **GRANTED** and Plaintiff John F. Kennedy's Eighth Amendment medical claims against Defendant R. T. Lowry, M.D., are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust;

(3)    Pursuant to 28 U.S.C. § 636(b), this matter is **REFERRED** to United States Magistrate Judge Robert E. Wier to establish, at the appropriate time, a discovery and dispositive motions schedule, conduct all further proceedings, and prepare proposed findings of fact and recommendations on any dispositive motions.

(4)    The Clerk of the Court shall **ASSIGN** this matter to Magistrate Judge

Robert E. Wier for all further disposition.

This September 17, 2013.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge